out of the chute today is United States v. Salas. It is DACA 23-8027. Ms. Smith, be pleased to hear your argument when you're ready. Let me just ask, can you hear me okay? Yes. All right, thank you. Good morning. So far I should say. Pardon me? So far I can. Okay, that's a good start. I feel like that this case is a law school examination case. It causes the court to need to reconcile and evaluate several bodies of law as it relates to search and seizure under the Fourth Amendment. It requires the court to look at the particularity requirement of the Fourth Amendment, particularly as it is applied to warrants issued for cell phones. It asks the court to look at the scope of searches pursuant to those warrants, particularly when one warrant starts as a drug warrant, the second warrant morphs into a child pornography case. It asks us to look at the effects of Frank's error, pretty significant Frank's error, I believe in this case, on the standard exclusion under Frank's and the inability of Leon Goodfaith to salvage that search. It also asks us to then look at application of the inevitable discovery doctrine when we have in this chain of events Frank's error. And at least based on my research, I wasn't able to find a case anywhere in our district or our circuit that squarely has these types of facts involved in them and application of the law to those facts. We'll probably be talking about Loera because that's where the district court high attacked and I expect the government will be talking about that too. I don't believe Loera applies in the same way on these facts, but we will be talking about that. I don't think that the government and the appellant have very much different to say about the events that happen, the actual factual events. I think we probably agree on those. Where we disagree is how the law applies to the evolution of those facts in this case. I know that you've read the briefs, but I do think it's important for purposes of discussion to go through a few of the salient facts just to make sure the timeline is right and obviously if the government disagrees with this timeline, they will alert you. On March 1st of 2021, and I think it's important to recognize that these facts occur in 2021 because of the conversation I want to have about Riley and Rushen. Law enforcement in Casper, Wyoming issued or executed an affidavit to support a search warrant and asked the state court judge to issue that warrant. In that warrant, it was for drugs and according to the very first statement that the defense mentioned in his motion to suppress, this is a typical drug evidence warrant and did not authorize computer searches. So that was certainly the perspective of defense counsel at the time. During the issuance of that warrant on March 1st, the law enforcement officer, Myers, and I'm just going to refer to him as Myers from here on out, did not seek nor did the district judge authorize any type of a search of a cell phone as a place to be searched or authorize the seizure of the data from that cell phone. It wasn't requested, it wasn't tried to extract for you so you could see what the face of those warrants looked like and what the affidavit looked like. That was on March 1st. You don't suggest they couldn't physically take the phone? No, I'm not suggesting that. Once they take the phone, even if they don't open it, they have the data. They have possession of the place to be searched. Yes. So they have the data. They have possession of it, but they don't have authorization to search it. Well, you know what they say about possession and how much of a law it is. With all due respect, Your Honor, I don't think so. Riley stands for the proposition that when you have a cell phone, you must have a search warrant. And Russian, handed down by this circuit, says that a search warrant for a cell phone, in order to withstand the particularity requirement of the Fourth Amendment, must have two things. The first thing is it must identify the place to be searched as the cell phone. The cell phone in and of itself isn't what's being searched. The data is what's being seized, not the phone. I think possession of the phone, from a physical perspective, just like I'm possessing this pin right now, is different than the legal construct of seizing that and searching it as in regard to the particular requirement of the Fourth Amendment. So I don't mean to split hairs, but I think it's more than splitting hairs, because we have law that says that. Thank you, Your Honor. What the warrant says is records and or receipts for electronic, that are electronically stored. And it doesn't say cell phone, and it doesn't say payo sheets, and it's not as detailed as some of the other cases, certainly. But it's more than a seizure, which is to say the very end of the first page, more for search and seizure, speaks about inventory of property seized, and concludes talking about the search, and make the search. Commanded to search the person, named for the property specified, serve this warrant, and make the search. That sounds to me like everything that is properly seized is also authorized to be searched. Your Honor, I don't think it was. The thing to be properly seized was the data, and that didn't happen until seven days later. It was seized when the forensics technician opened the phone. It was not lawfully seized under Riley and Rushen until that point. Well, Riley was a search instant to arrest, right? That's not very helpful in our context. Here there's a warrant. Pardon me, I'm sorry. There's a warrant. Yes, and that's what alters the method in which whatever authority there is for the search. Because under the Fourth Amendment, we have two ways to have a valid search. One is with a warrant, found on probable cause, meeting the particularity requirement. And the second one is pursuant to an exception, to the warrant requirement. And if we meet both of those or one of those, then there's no issue about suppression. Is it your position then that there always has to be a second warrant when electronics are seized, every single time? When cell phones are seized, that's a different thing. I don't think the law goes as far as to say every electronic. Okay, that's the rule you're proposing, though, is that any time a cell phone is seized, regardless of what the warrant says, you have to get a second warrant. I think that's what Rushen says, Your Honor, and I think it says it very explicitly. But Rushen doesn't have the same language in the search warrant, does it? It just talks about seizure. It doesn't talk about search. I don't think it matters, because the rule of law is very simple in Rushen, and that's what this Court has to resolve, is, is the rule of law what the words of Rushen say it is, or is it something different? And we certainly believe that as it relates to due process, I didn't argue this in the brief, but as it relates to due process, we the people have the right to rely on the precedence set by our courts. And if Rushen says that, then we have the right to rely on that. And Rushen was handed down in 2017. These facts occurred in 2021. What particular part of Rushen are you relying on? Just a moment, Your Honor. And if I'm sending you off on something and chewing your time up, I can look at it. No, that's okay. It would be helpful if you'd ask me the specific question. I'm sorry. You keep saying Rushen, Rushen, and I have Rushen in my hand. I'm sorry. Okay. I say Rushen's different, and you say, no, it's not, or else it encompasses what we're talking about. I'm looking at... In Rushen, the situation was that there were multiple cell phones. Some were taken at the time of arrest and then held by law enforcement. And then there was a subsequent warrant issued, but the warrant identified the place in the content, not as a location, but the location as the residence. And the search warrant did not identify the location of the two cell phones that law enforcement already had in their possession. And in that particular case, in section one of the opinion, the court goes into the discussion about Riley. In the context of cell phones and cell phone data, the Supreme Court recently held in Riley that a warrant is generally required to search digital information on a cell phone, even when the phone is seized incident to further down a sentence. The problem, what I understand Rushen's problem, the warrant itself merely authorizes a search of the residence and seizure of any cell phones found inside. In other words, the warrant's different than this one. It says you can seize cell phones, but it doesn't say anything about searching, is my understanding, and correct me if I'm wrong. And then it goes on to say the warrant did not identify either of the phones that were already in law enforcement's material, for example, text messages, photos, or call logs. Law enforcement was authorized to seize. And then it goes on to talk about Leon, and ultimately the evidence did come in under good faith, but that's not the part of the opinion I'm talking about. I'm talking about the rule of law. And if I can find it, Your Honor. It's in our brief, and I apologize. We can review it as well. I didn't mean to run your clock. That's fine. Please proceed with it. My time is your time, so if it's something of interest to you, I certainly want to attempt it. But at the end of the day, the rule of law in Russian is exactly what we have put out in our brief, and what I've stated is, if you're going to seize data from a cell phone, you must have a warrant that says, to meet particularity, that the place to be searched is the cell phone, and the data is what is being seized. And that's been established, going back to Riley. And Riley sets forth the reason that's the law. And it's because these little things we call cell phones are our whole lives now. And Riley was handed down 10 years ago. They talked about having 16 gigabyte of storage in Riley. I looked at my phone before I came in today. I have 128. So it has exploded since Riley was set down, originally. That's why there's a different rule. And I'm not saying it's right, wrong, or otherwise. I'm saying that's the rule. It makes sense to me. But we can argue about maybe what it should be. Maybe this isn't perfect. But that is the rule of law that we have today, and that's the rule that should have been applied. And it never was. When we get to the Frank's error, and I don't want to minimize that, I think that changes this case. All other things being equal, if the error for probable cause had been for something other than law enforcement malfeasance, in a pretty big way, the law enforcement officer, in my words, lied. Lied to the magistrate who was issuing the warrant. He didn't know. Lied to the ultimate forensic specialist who actually opened the phone and found the images. That's why the district judge tossed all of that evidence in the first instance. I can't find a case, and it may be out there and I just didn't find it, I can't find a case where there's been Frank's error, and that was the reason for invalidating the warrant, the particularity requirement, and the probable cause requirement, where the evidence ultimately came in under some different theory. It seems to me that Frank's error, because we are talking about law enforcement malfeasance, does, and in my opinion, should trump almost everything else, at least on the facts of this case. How do you respond to the inevitable discovery argument? I appreciate that, Your Honor. I won't talk about, I know you know how that happens, but we're going back and reaching back now to the first warrant. That's the only thing that we could modify or amend that would ultimately get us to the search, which was opening the cell phone. My response to that is, it simply does not meet Riley and Rushen, and there's nothing you can do to change that, because that was a drug warrant. The scope of that warrant was for drugs, not for child pornography. Thank you. Thank you, Counsel. Good morning, Your Honors, and may it please the Court. My name is Christine Martins, and I was asked to speak on a case that I think is a self-amendment violation. The evidence would have been inevitably discovered. Therefore, I declined to suppress any of the evidence, allowing it all to come in at trial. The Court has discussed with the defense the Rushen case. So, that's where I'd like to pick up that discussion, and to answer the Court's question, really, what happened in Rushen is the straightforward proposition that cell phones must be searched pursuant to a warrant, and there were two cell phones that were seized incident to arrest. There was a later warrant application that sought to seek the home, and any cell phones found therein, and what happened was the two cell phones that were seized incident to arrest were left out of the warrant itself. So, when they were searched, they were searched without the warrant. There was simply a mismatch in the application for that warrant, and the warrant itself. Essentially, a paperwork error, and because that was the level of error we're talking about, the Court applied Lee on good faith. So, on those facts, with that discussion of particularity, and what was actually authorized to be searched under the warrant as issued, there's nothing extraordinary about the conclusion that this Court reached in Rushen. It simply stands for the proposition that a cell phone search, seized incident to arrest, must be searched pursuant to a warrant, which is consistent with Riley. Now, when we're talking about what a warrant is, and what a warrant authorizes, this Court has consistently said that warrants for electronic devices are sufficiently particular, so long as they name a particular crime that the material is being searched for, or a class of evidence to be located during that search, and the warrant here meets those criteria. So, it's pretty sparse, though, compared to other warrants we see, and I realize it's a state warrant, but it's meager, and records and or receipts, electronic storage, and goodbye. Normally, it's more robust than that. That's true, Your Honor. Is there a case that says that the low watermark of this warrant is satisfactory? I think that we can gather that from the collection of cases cited in the briefing. When we talk about cases like Burgess, Rushen, Laura, Palms is a case looking at an Oklahoma state warrant for human trafficking, the low watermark for particularity is to name the crime for which we are searching, and the place to be searched. That there are better ways to accomplish that is certainly true, but it doesn't invalidate this warrant, and at any rate, this argument wasn't even directly raised to the District Court. In the pleadings below, it's true that there were unsighted sentences, two of them, in the motions, but they offered no analysis on why the drug search warrant would have not allowed this citation to authority, and usually, this court declines to review such presumptorily raised arguments, and even if that was enough to preserve it for review, the argument has changed on appeal. There was no argument at the District Court about there always needing to be a warrant issued specifically for a cell phone, even if the cell phone was found in the home where there was a warrant for the search and seizure of electronic data. This entire set of our briefing about Rushen and Riley just simply didn't come up at the District Court, and what's more, there has been no plain error analysis provided by the other side of this question in their opening briefing, so Your Honor, not only is it forfeited, it's also waived before this court. Additionally, it's just not what the law says, so everybody agrees that a cell phone should be that when we are searching a home pursuant to a warrant that authorizes the seizure of electronic evidence, that that would not also authorize the search of the devices found therein. It's a straightforward application of the general Fourth Amendment principle that once a warrant authorizes the search of a location, that officers may look in any container within that location that could the evidence they are authorized to search for and seize. I think it was the Loera case where the court talked about how a search warrant authorizing a search for a stolen car could certainly look in a garage, but not in the attic, and making that analogy to the container rule for the purpose of computer and electronic device searches. So here we have a search warrant, which admittedly is rather sparse, but legally sufficient, authorizing the search of the defendant's home, including the seizure of electronic data, the records and receipts showing use and delivery of controlled substances. The cell phone, the iPhone that was seized pursuant to that drug warrant, was simply a container within the location that was authorized to be searched under the unchallenged drug warrant, and officers were authorized to search the contents of that phone under that unchallenged drug warrant. I think also it's worth pointing out that the district court, in its order, called the drug search warrant unchallenged, and in the defendant's reply, there's some discussion about whether the defendant was somehow misled, about the nature of this argument, and it's worth pointing out that if the defendant was in fact confused about what was at issue, he had the opportunity to make a motion to reconsider. That's exactly what a motion to reconsider is for, is if there's been some confusion, misapprehension of the arguments or authorities, and he did not do so. He didn't submit any additional briefing whatsoever. So if there was some question about that first drug search warrant, it really should have been, and could have been, raised to the district court. So the first warrant is set in stone. Is the dismissal of the second warrant also set in stone? You agree you're not contesting the child porn warrant? Well, I don't really agree, Your Honor. Certainly below, the challenge was focused on whether these two warrants could be read together, and whether they were read together and had sufficient probable cause, and then there was the Franks issue. I think that the district court was overly harsh with this officer. When we think about what that interview with the girlfriend actually was, it was about an hour and a half long. There were pending domestic violence charges between the girlfriend and the defendant. She sobbed, she was inaudible, and the officer wrote that second affidavit without the benefit of studying the video the way that the lawyers in the court did afterwards. And I think that while it is true that the way that the officer represented the girlfriend's words did not match the video, I think what we based on the rushed application without the ability to review that audio. Okay, but you're not relying on the second warrant. No, Your Honor, we don't have to. For our purposes, we can just pretend it doesn't exist. And that's exactly what the district court did. So really, there's multiple ways that inevitable discovery gets law enforcement to this evidence. Where the district court halted its analysis that was that the unchallenged drug search warrant allowed law enforcement to access the data on this cell phone. And it specifically found that the computer forensic analyst, Caleb Fornes, credibly testified that once we accessed that phone, regardless of whether he was doing that analysis for the child pornography search warrant or the drug search warrant, the search would have proceeded in the same manner. And that was that he would look at the settings to determine the user of the device, and then he would go to the government's Exhibit 5 at the suppression hearing, which is also available to this court, was prepared to help demonstrate how immediately apparent the child pornography was in the camera roll. So looking in the camera roll, it was not the very first page, but all you had to do was scroll down just a little bit, and the child pornography was right there. But it was five videos that were charged, is that right? Five videos and a collection of 50-some-odd still images. And certainly by the time all of those were found and reviewed, the investigator, the analyst, could have sought another search warrant and did not. True, and that's because he thought he was operating under the validly issued child pornography warrant. And we just said that went poof. So what does that do to our analysis? I'm sorry, I didn't know that he had the ability to keep on going, but it turns out he didn't. So where does that leave us? Oh, for inevitable discovery. So when we're looking at the hypothetical scenario, if there hadn't been the second child pornography warrant, the unchallenged drug search warrant would have been executed in the very same way. So what the testimony was is that law enforcement always would have gotten to the pictures in that camera roll in this case. Now, that's where things become hypothetical, because if they hadn't been acting pursuant to the authority of the second later invalidated child pornography warrant, the testimony was that the common practice was for law enforcement to stop what they were doing and apply for a second warrant when they found evidence of a crime other than what they were investigating. That was sort of the whole first part in this particular suppression hearing, was explaining what they called the piggyback warrant process. So based on that routine practice, they would have stopped what they were doing and sought that second child pornography warrant. But it's more than a routine practice. You are now investigating another crime, and you have exceeded the search warrant when you start to do that. And granted, the analyst did so thinking that he had the authority to do that based on the second warrant, but he didn't. And so you have a missing link. The analyst needed to go back and get a second search warrant as soon as he saw something that looked like child pornography. Well, that's not quite right. And so first of all, not every link in the investigative chain must be proved up to reach the conclusion that the evidence would be inevitably discovered. And the recent Tolbert case says so. Second, there was no reason for the analyst in what he was actually doing to stop what he was doing because he believed he was acting pursuant to the authority of a valid warrant. So as a matter of the actual chain of events. And then when we look at the hypothetical chain of events, for example, this case closely tracks Loera. So what the court said in Loera was that when a single line of investigation is deemed illegal, essentially we imagine what would have happened if that hadn't happened. So there doesn't have to be an alternative line of investigation. We don't fault the officers for continuing to do what they did because they believe they had lawful authority. We look at what would have happened if that intervening, later deemed illegal search had never occurred. So that's why we're talking about here, had the officers instead executed the uncontested drug search warrant, they would have come to the child pornography. When they find evidence of a different crime than what they are authorized to search for, they routinely apply for that second warrant specifically for that new crime. So that's where all of that evidence gets us to the conclusion that there would have ultimately been issued the second warrant specifically for the child pornography crime. And I'm not saying it's dispositive, and I'm not even saying it's a live issue, but that's the piece that never happened. There was never any testimony from an analyst or a finding by the court that says, if we would have known that the second warrant wasn't any good, we would have stopped and we would have gone and gotten ourselves a second warrant for child porn. That's absent from the record, near as I can tell. That's where, I don't think it was said in so many words, not by the analyst, but Detective Shannon Daly did provide that testimony about when we find the evidence of an additional crime, we go through this piggyback warrant process. It was more generalized because that was not the The second warrant was invalid, the iPhone had really been seized under the second warrant, so there was that factual issue, it was reading the warrants together, whether the piggyback process was appropriate. It wasn't further developed simply because that was not the point that was being thought about. I only have a little bit of time left, but I did want to comment on the 28J letter for the other side and this assertion that there's no way to use inevitable discovery when there's a Franks error at issue. First of all, that would be a new and different argument raised in a 28J letter for why inevitable discovery wouldn't apply, so I don't believe that's proper. But I would ask the court to think about Nix v. Williams, the founding case in the inevitable discovery area. And in that case, the United States Supreme Court specifically overruled the Eighth Circuit, which had passed the Eighth before the inevitable discovery doctrine could apply. So in this area, law enforcement misconduct is really at the heart of the inevitable discovery doctrine. Despite law enforcement misconduct, inevitable discovery allows the evidence to come in over the exclusionary rule. So that there was law enforcement misconduct determined by the district court here is no bar to the application of the doctrine. Any questions? Thank you, Your Honors. Thank you. Ms. Schmidt, your time has run, but I'll give you one minute and hold you to it unless there are questions, if you want to. Okay, thank you very much. Thank you for your arguments. The case is submitted and counsel are excused.